NUMBER 13-03-155-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG




ROBERT NARVELL CARNAHAN,                                               Appellant,

v.

THE STATE OF TEXAS,                                                                Appellee.




On appeal from the 347th District Court
of Nueces County, Texas.




MEMORANDUM OPINION

Before Justices Hinojosa, Yanez and Castillo
Memorandum Opinion by Justice Castillo

         The indictment charged appellant Robert Narvell Carnahan with thirteen counts of
various sexual offenses against his minor stepdaughters.


 A jury returned a guilty verdict
on all counts and assessed punishment at fifteen years for each count of indecency


 and
sexual assault,


 and forty years for each count of aggravated sexual assault.


 Carnahan
presents twenty-four issues on appeal. We address these seriatim.
I. COMPETENCY
A. Inquiry or Hearing
          By his first issue, Carnahan argues that the trial court had the duty to conduct a
competency inquiry and hearing. The State responds that Carnahan waived error because
defense counsel did not pursue competency or, alternatively, the evidence presented failed
to raise the issue. 
          In both Texas and the federal system, "it has long been accepted that a person
whose mental condition is such that he lacks the capacity to understand the nature and
object of the proceedings against him, to consult with counsel, and to assist in preparing
his defense may not be subjected to a trial." McDaniel v. State, 98 S.W.3d 704, 709 (Tex.
Crim. App. 2003). The conviction of an accused person while he is legally incompetent
violates due process. Id. Thus, to protect a criminal defendant's constitutional rights, a
trial court must inquire into the accused's mental competence once the issue is sufficiently
raised. Id. These due process standards are built into the Texas Code of Criminal
Procedure. Id.; see Tex. Code Crim. Proc. Ann. art. 46B.001-.171 (Vernon Supp. 2004-05) (formerly codified at Tex. Code Crim. Proc. Ann. art. 46.02 (Vernon 1979)).


 
          Former article 46.02 section 1A(a) provided that “[a] person is incompetent to stand
trial if the person does not have: (1) sufficient present ability to consult with the person’s
lawyer with a reasonable degree of rational understanding; or (2) a rational as well as a
factual understanding of the proceedings against the person.” Act of June 14, 2001, 77th
Leg., R.S. ch. 828, §§ 3, 4, 2001 Tex. Gen. Laws 1650, 1652, repealed by Act of May 14,
2003, 78th Leg., R.S. ch.35, §§ 15, 16, 2003 Tex. Gen. Laws 57, 72 (current version at
Tex. Code Crim. Proc. Ann. art. 46B.001-.171 (Vernon Supp. 2004-05)). Former article
46.02 section 2 provided:
          (a) The issue of the defendant's incompetency to stand trial shall be
determined in advance of the trial on the merits if the court determines there
is evidence to support a finding of incompetency to stand trial on its own
motion or on written motion by the defendant or his counsel filed prior to the
date set for trial on the merits asserting that the defendant is incompetent to
stand trial.
(b) If during the trial evidence of the defendant's incompetency is brought to
the attention of the court from any source, the court must conduct a hearing
out of the presence of the jury to determine whether or not there is evidence
to support a finding of incompetency to stand trial.
The difference between section 2(a) and section 2(b) is the timing. McDaniel, 98 S.W.3d
at 710. In section 2(a), the issue of competency is raised before trial, while under section
2(b), the issue of competency is first raised at some point during the trial. Id. Thus:
(1) if a competency issue is raised by the defendant, any party, or the court;
and
 
2) evidence of incompetency is brought to the attention of the trial court by
the defendant, any party, or the court;
 
(3) of the type to raise a bona fide doubt in the judge's mind regarding the
defendant's competency to stand trial; then
 
(4) the judge must conduct a Section 2 "competency inquiry" to determine if
there is some evidence sufficient to support a finding of incompetence, and
if there is,
 
(5) the judge must impanel a jury for a Section 4 "competency hearing."

See McDaniel, 98 S.W.3d at 710-11. The requirements of each step must be fulfilled
before moving on to the next. Id. at 711. 
          A defendant is presumed competent to stand trial and shall be found competent to
stand trial unless proved incompetent by a preponderance of the evidence. Act of June
14, 2001, 77th Leg., R.S. ch. 828, §§ 3, 4, 2001 Tex. Gen. Laws 1650, 1652 (repealed
2003). Whether an issue of incompetency exists at trial is left to the discretion of the
judge. Ainsworth v. State, 493 S.W.2d 517, 521 (Tex. Crim. App. 1973). A section 2 or
“competency” inquiry is required only if the evidence brought to the judge’s attention raises
a bona-fide doubt in the judge’s mind about the defendant’s competency to stand trial. 
McDaniel, 98 S.W.3d at 710. 
          In this case, Carnahan's original defense counsel moved for a competency
examination by an expert because "[t]here is an issue regarding whether [Carnahan] is
‘competent’ to stand trial." Defense counsel's affidavit filed in support of the motion states
that (1) he knew Carnahan for ten years, (2) Carnahan was a lawyer with above average
skill and intelligence, (3) Carnahan's conclusion that a document was exculpatory (when
according to counsel it was not) "alone raises in [counsel's] mind the question of
incompetency," (4) Carnahan's conduct "indicates an irrational lack of understanding of
the proceedings against him and the uncontroverted facts surrounding the charges against
him," and (5) Carnahan lacked "sufficient present ability to consult and assist in his
defense." The defense argued the motion at a pre-trial hearing, reasserting the statements
in the affidavit. The trial court ordered a psychiatric examination.


 At the same hearing,
the trial court granted defense counsel's motion to withdraw based on his lack of
experience in criminal cases. 
          Further proceedings on the competency issue did not occur. Carnahan did not
object to the trial court's proceeding with the trial. He testified at trial. During post-trial
proceedings, both trial counsel, appointed after the withdrawal of initial counsel, testified
they made the decision not to pursue the competency issue.
          Carnahan essentially argues that his motion and the trial court's ruling were
sufficient to require further competency proceedings before trial. We conclude he forfeited
any purported error because he failed to object to the trial court's proceeding to trial. 
McDaniel, 98 S.W.3d at 711. Even assuming Carnahan preserved error, on this record,
we cannot conclude the trial court abused its discretion. Under the former article 46.02
section 1A(b), the evidence adduced did not overcome the presumption of competency. 
See Act of June 14, 2001, 77th Leg., R.S. ch. 828, §§ 3, 4, 2001 Tex. Gen. Laws 1650,
1652 (repealed 2003). . Carnahan's motion merely requested an examination to determine
competency; it did not specifically assert that he was incompetent. See McDaniel, 98
S.W.3d at 711. The trial court granted the relief requested. We overrule Carnahan's first
issue.
B. Motion for New Trial
          By his second and third issues, Carnahan argues the trial court erred in overruling
his motion for new trial because (1) he did not waive his competency issue, and (2) he
presented sufficient evidence for a jury to determine competence. 
          In criminal cases, there is no common law right to a new trial. Banks v. State, 186
S.W. 840, 841 (Tex. Crim. App. 1916). The right is purely statutory. Id.; see Drew v. State,
743 S.W.2d 207, 223 (Tex. Crim. App. 1987) (en banc); see also Tex. R. App. P. 21.2. The
trial court is granted wide latitude in exercising the decision to grant or deny a motion for
new trial, and in the absence of an abuse of discretion, an appellate court should not
reverse. Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). 
          Even assuming the evidence was sufficient to raise the issue of competency,
Carnahan did not fulfill the requirements of each of the McDaniel steps because he did not
submit to the psychiatric examination ordered. See McDaniel, 98 S.W.3d at 710-11. A
mere assertion of incompetency, unsupported by any facts or evidence, is not sufficient to
require a "competency inquiry" under section 2a or a "competency hearing" under section
4. See id. at 711. On this record, we conclude the trial court did not abuse its discretion
in denying the motion for new trial. We overrule the second and third issues presented.
II. PSEUDONYMS
          By his fourth and fifth issues, Carnahan argues that the trial court erred in applying
pseudonyms to the victims because the use tainted the presumption of innocence and 
denied him a fair trial. The State counters that the use of pseudonyms to identify victims
is statutory and that Carnahan waived error.
          A victim may choose to use a pseudonym instead of his or her name in all public
files and records concerning the offense, including police summary reports, press releases,
and records of judicial proceedings. Tex. Code Crim. Proc. Ann. art. 57.02(b) (Vernon
Supp. 2004-05); see also Greeno v. State, 46 S.W.3d 409, 413 (Tex. App.–Houston [14th
Dist.] 2001, no pet.). A victim who elects to use a pseudonym must complete a
pseudonym form developed under this article and return the form to the investigating law
enforcement agency. Tex. Code Crim. Proc. Ann. art. 57.02(b) (Vernon Supp. 2004-05). 
 Article 57.02(f) requires that the prosecutor use the pseudonym "in all legal proceedings
concerning the offense." Tex. Code Crim. Proc. Ann. art. 57.02(f) (Vernon Supp. 2004-05). The trial court may be permitted to disclose the victim's legal name, but only if the
court finds that information to be essential in the trial of the offense, or the identity of the
victim is in issue. Tex. Code Crim. Proc. Ann. art. 57.02(g) (Vernon Supp. 2004-05). 
          Carnahan complains in particular about the conditions the trial court imposed on the
use of pseudonyms during trial. He argues that the trial court's comments regarding this
use “brought undue attention to their [the complainants'] version of the facts so as to rebut
the presumption of innocence." The only reference to the record points us to the following
trial court statement:
THE COURT: I'm gonna let you use names, so how are you harmed? You
want names, you can get to use names. But, me, what I'm gonna do is try
to safeguard it not leave this room. You need the names to leave this room?
 
[DEFENSE COUNSEL]: No.

          By enacting article 57.02 and changing the manner in which the victim may be
identified in an indictment, the Legislature sought to satisfy two competing interests: the
defendant's due process right to notice of the offense for which he was indicted; and the
victim's interest in avoiding the embarrassment associated with a public pronouncement
of the details of the alleged offense. Stevens v. State, 891 S.W.2d 649, 651 (Tex. Crim.
App. 1995) (en banc). We conclude the trial court's conditions were consistent with
legislative intent. Carnahan received notice of the offense, including the identity of his
accusers, and the accusers' names were protected from public disclosure. See id. The
record does not reflect that the trial court's conditions exceeded the scope of its statutory
authority.


 We overrule the fourth and fifth issues presented. 
III. LIMITING CROSS-EXAMINATION 
          By his sixth and seventh issues, Carnahan argues the trial court violated his
confrontation right by severely limiting his cross-examination of two State's witnesses
regarding (1) behavioral characteristics of his stepdaughters, and (2) the younger
stepdaughter's sexual history. The State responds, in part, that error, if any, is harmless.
          Carnahan points first to the trial court's ruling precluding the defense from
questioning his ex-wife about his stepdaughters’ trophies and achievements. The trial
court sustained the State's relevancy objection and requested the defense to present 
persuasive authority to allow the question. Outside the jury's presence, the defense
argued that the "particular response that I was looking for, was that they would be unable
to feel any pride of accomplishment." The question was one in a "list of behaviors that .
. . basically, describe what people do when things happen."


 The defense offered to "back
off of trophies." The trial court ruled that he would allow the question if the defense
presented to the jury "that there's a study . . . a pattern that . . . victims of sexual crimes
behave a certain way." Still outside the presence of the jury, the defense provided the
court with the questions "[n]ot about trophies" that would be asked of the same witness.


 
The defense argued that the State did not object to those questions. The trial court stated,
"I don't have any problem, if I don't have an objection." Before the jury, the defense asked,
without objection, questions on the girls' behaviors. Carnahan's ex-wife responded that
they were "normal kids," the older one would mumble when flustered, the "little one would
get quite angry" with Carnahan, and they did not have nightmares or hallucinations. 
Because the defense withdrew the question about trophies, the complaint is not preserved
for review. See Tex. R. Civ. P. 33.1(a)(1). 
          The Sixth Amendment guarantees a criminal defendant the right to confront the
witnesses against him. See U. S. Const. amend. VI. The confrontation clause is made
applicable to the states by the Fourteenth Amendment. Shelby v. State, 819 S..W.2d 544,
546 (Tex. Crim App. 1991) (en banc); see U. S. Const. amend. XIV. A primary interest
secured by the confrontation clause is the right of cross-examination. Lopez v. State, 18
S.W.3d 220, 222 (Tex. Crim. App. 2000). Because cross-examination is a cornerstone of
the criminal trial process, a defendant must be given wide latitude to explore a witness's
story, to test the witness's recollection of events, and to impeach his or her credibility. Love
v. State, 861 S.W.2d 899, 904 (Tex. Crim. App. 1993) (en banc). However, the trial court
retains wide latitude to impose reasonable limits on cross-examination, based upon
concerns about "harassment, prejudice, confusion of issues, the witness's safety, or
interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475
U.S. 673, 679 (1986); Lopez, 18 S.W.3d at 222.
          Rule 608 of the Texas Rules of Evidence governs admissibility of impeachment
evidence. Tex. R. Evid. 608. Rule 608(b) expressly forbids the use of specific instances
of conduct to impeach a witness's credibility except to "expose bias or interest, rebut
affirmative representations made on direct examination, or to demonstrate a lack of
capacity." Lagrone v. State, 942 S.W.2d 602, 613 (Tex. Crim. App. 1997) (en banc).


 
          Thus, while the defendant has a constitutional right to confront witnesses, this right
is not absolute and the trial court retains broad discretion to limit cross-examination. See
Thomas v. State, 137 S.W.3d 792, 797 (Tex. App.–Waco 2004, no pet.) (citing Carroll v.
State, 916 S.W.2d 494, 498 (Tex. Crim. App. 1996) (en banc)). An abuse of discretion
occurs when the trial court acts arbitrarily or unreasonably, without reference to guiding
rules or principles. Montgomery v. State, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990) (en
banc). In other words, an abuse of discretion occurs only when the trial court's decision
is so wrong as to lie outside that zone within which reasonable persons might disagree. 
Id. We conclude the trial court did not abuse its discretion in sustaining the State's
relevancy objection regarding the girls' achievements because the ruling lies within the
zone of reasonable disagreement. Id. Even so, the record shows the jury heard some
evidence regarding the girls' school achievements and activities.


 We overrule the sixth
issue presented. 
          Next, we address Carnahan's complaint that the trial court's ruling limited cross-examination of the younger stepdaughter regarding her sexual history. Carnahan argues
that this line of questioning was necessary to rebut medical testimony that a cyst on her
leg could have been caused by a sexually transmitted disease. Outside the presence of
the jury, the defense argued that the State opened the door to questioning about the
younger stepdaughter's sexual history when it elicited this testimony.


 The trial court
instructed the jury to limit its "consideration of that evidence only to show what led to the
outcry of the young girl, and not that it was caused by the defendant or anybody else, the
cyst."


          In a prosecution for a sexual offense, reputation or opinion evidence
of the past sexual behavior of an alleged victim of such crime is not admissible. See Tex.
R. Evid. 412(a). Similarly, evidence of specific instances of an alleged victim's past sexual
behavior is not admissible unless necessary to rebut or explain medical evidence offered
by the State. See Tex. R. Evid. 412(b)(2)(A). Ruling outside the presence of the jury, the
trial court disallowed the cross-examination of the younger stepdaughter on grounds that
the purpose of the evidence was to show that the examination of the cyst led to the child's
outcry statement. Subsequently, the trial court gave the jury a limiting instruction. Under
Rule 105(a), when evidence is admissible for one purpose, but not another, "the court,
upon request, shall restrict the evidence to its proper scope and instruct the jury
accordingly." Tex. R. Evid. 105(a). We cannot conclude that the trial court's ruling was
without reference to guiding rules or principles or outside the zone of reasonable
disagreement. Montgomery, 810 S.W.2d at 379. We overrule Carnahan's seventh issue. 
IV. SUFFICIENCY
          By his eighth through twentieth issues, Carnahan argues the evidence was legally
and factually insufficient to sustain the convictions for indecency, sexual assault, and
aggravated sexual assault.


 The State responds that the evidence is sufficient.
A. Standards and Scope of Review
1. Legal Sufficiency
          A legal-sufficiency challenge requires us to review the relevant evidence in the light
most favorable to the verdict, and then to determine whether a rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt. Escamilla v.
State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing Jackson v. Virginia, 443 U.S.
307, 319 (1979)); see also Swearingen v. State, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003)
(en banc); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000) (en banc). This
standard is designed to give "full play to the [jury's] responsibility fairly" to "draw reasonable
inferences from basic facts to ultimate facts." Sanders v. State, 119 S.W.3d 818, 820
(Tex. Crim. App. 2003). We consider all the evidence that sustains the conviction, whether
properly or improperly admitted. Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim. App.
2001) (citing Garcia v. State, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994) (en banc)). 
Similarly, we consider all the evidence that sustains the conviction, whether submitted by
the prosecution or the defense, in determining the legal sufficiency of the evidence. King
v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc); Cook v. State, 858 S.W.2d
467, 470 (Tex. Crim. App. 1993) (en banc). In this review, we are not to reevaluate the
weight and credibility of the evidence; rather, we act only to ensure that the jury reached
a rational decision. Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993) (en
banc). 
          The legal sufficiency of the evidence is measured against the elements of the
offense as defined by a hypothetically correct jury charge for the case. Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997). This standard of legal sufficiency ensures that
a judgment of acquittal is reserved for those situations in which there is an actual failure
in the State's proof of the crime, rather than a mere error in the jury charge submitted. Id. 
We then determine if any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt. Jackson, 443 U.S. at 319; Johnson, 23 S.W.3d at
7. 
          If we reverse a criminal case for legal insufficiency, we reform the judgment of
conviction to reflect conviction for a lesser offense only if a jury charge on the lesser
offense was either submitted or requested, but denied. Collier v. State, 999 S.W.2d 779,
782 (Tex. Crim. App. 1999). Otherwise, we vacate the judgment of conviction for legal
insufficiency and order a judgment of acquittal. Swearingen, 101 S.W.3d at 95. 
2. Factual Sufficiency
          We are constitutionally empowered to review the judgment of the trial court to
determine the factual sufficiency of the evidence used to establish the elements of the
offense with which Carnahan was charged. See Johnson, 23 S.W.3d at 6. The Texas
Court of Criminal Appeals has restated the factual sufficiency standard of review:
There is only one question to be answered in a factual sufficiency
review: Considering all of the evidence in a neutral light, was a jury rationally
justified in finding guilt beyond a reasonable doubt? However, there are two
ways in which the evidence may be insufficient. First, when considered by
itself, evidence supporting the verdict may be too weak to support the finding
of guilt beyond a reasonable doubt. Second, there may be both evidence
supporting the verdict and evidence contrary to the verdict. Weighing all the
evidence under this balancing scale, the contrary evidence may be strong
enough that the beyond-a-reasonable-doubt standard could not have been
met, so the guilty verdict should not stand. This standard acknowledges that
evidence of guilt can 'preponderate' in favor of conviction but still be
insufficient to prove the elements of the crime beyond a reasonable doubt. 
Stated another way, evidence supporting guilt can 'outweigh' the contrary
proof and still be factually insufficient under a beyond-a-reasonable-doubt
standard. 

Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004). A clearly wrong and
unjust verdict occurs where the jury's finding is "manifestly unjust," "shocks the
conscience," or "clearly demonstrates bias." Prible v. State, No. AP-74,487, 2005 Tex.
Crim. App. LEXIS 110, at *16-*17 (Tex. Crim. App. January 26, 2005) (designated for
publication). 
          When the State bears the burden of proof, the proof of guilt is factually insufficient
if it is so obviously weak as to indicate that a manifest injustice has occurred or if it is
greatly outweighed by contrary proof. Zuliani v. State, 97 S.W.3d 589, 593-94 (Tex. Crim.
App. 2003). In determining the factual sufficiency of the elements of the offense, we view
all the evidence neutrally, not through the prism of "the light most favorable to the
prosecution." Johnson, 23 S.W.3d at 6-7 (citing Clewis v. State, 922 S.W.2d 126, 129
(Tex. Crim. App. 1996)). However, we approach a factual-sufficiency review with
appropriate deference to avoid substituting our judgment for that of the fact finder. Id. Our
evaluation should not intrude substantially on the fact finder's role as the sole judge of the
weight and credibility given to witness testimony. Id. We must consider the most important
evidence that the appellant claims undermines the jury's verdict. Sims v. State, 99 S.W.3d
600, 603 (Tex. Crim. App. 2003).  
          Every fact need not point directly and independently to the accused's guilt. 
Vanderbilt v. State, 629 S.W.2d 709, 716 (Tex. Crim. App. 1981). A conclusion of guilt can
rest on the combined and cumulative force of all the incriminating circumstances. Id. We
reverse a judgment of conviction only if proof of guilt is so obviously weak and manifestly
unjust or the contrary evidence is so strong that the standard of proof beyond a reasonable
doubt could not have been met. Prible, 2005 Tex. Crim. App. LEXIS 110, at *16-*17. 
          In conducting a factual sufficiency review, we review all the evidence. Cain v. State,
958 S.W.2d 404, 408 (Tex. Crim. App. 1997). In the opinion, we "show our work" when
we consider and address the appellant's main argument for urging insufficiency of the
evidence. See Tex. R. App. P. 47.1; Sims, 99 S.W.3d at 603 ("A proper factual sufficiency
review must include a discussion of the most important and relevant evidence that supports
the appellant's complaint on appeal."). This practice benefits the parties, maintains the
integrity of the justice system, and improves appellate practice. Id. 
          If we reverse a criminal case for factual insufficiency, we vacate the judgment of
conviction. Clewis, 922 S.W.2d at 133-34. We remand for a new trial a criminal case
reversed for factual insufficiency so a second jury may have the chance to evaluate the
evidence. Swearingen, 101 S.W.3d at 97. 
3. General Verdict
          When the indictment alleges alternate theories of committing the same offense, it
is proper for the jury to be charged in the disjunctive and to return a general verdict of
guilty. Tex. Code Crim. Proc. Ann. art. 37.07, § 1(a) (Vernon Supp. 2004-05) (verdict
must be general); Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) (en
banc). The conviction will be upheld if the evidence is sufficient to support a finding of guilt
under any one of the theories submitted. Kitchens, 823 S.W.2d at 258; see Aguirre v.
State, 732 S.W.2d 320, 326 (Tex. Crim. App. 1987) (en banc); Yandell v. State, 46 S.W.3d
357, 363 (Tex. App.–Austin 2001, pet. ref'd).
4. Testimony of a Child in Sexual Conduct Cases
          The testimony of a child sexual abuse victim alone is sufficient to support a
conviction for aggravated sexual assault. Tex. Code Crim. Proc. Ann. art. 38.07 (Vernon 
2005); see Garcia v. State, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978). Courts give wide
latitude to testimony given by child victims of sexual abuse. See Villalon v. State, 791
S.W.2d 130, 134 (Tex. Crim. App. 1990) (en banc). The victim's description of what
happened to her need not be precise, and she is not expected to express herself at the
same level of sophistication as an adult. See id. There is no requirement that the victim's
testimony be corroborated by medical or physical evidence. Garcia, 563 S.W.2d at 928;
Kemple v. State, 725 S.W.2d 483, 485 (Tex. App.–Corpus Christi 1987, no writ).
     B. The Hypothetically Court Charge
          A hypothetically correct charge is one that accurately sets out the law, is authorized
by the indictment, does not unnecessarily increase the State's burden of proof or restrict
its theories of liability, and adequately describes the particular offense. Malik, 953 S.W.2d
at 240; Cano v. State, 3 S.W.3d 99, 105 (Tex. App.–Corpus Christi 1999, pet. ref'd). A
hypothetically correct jury charge does not simply quote from the controlling statute. 
Gollihar v. State, 46 S.W.3d 243, 254 (Tex. Crim. App. 2001). Its scope is limited by the
statutory elements of the offense as modified by the charging instrument. See Fuller v.
State, 73 S.W.3d 250, 254 (Tex. Crim. App. 2002) (Keller, P.J., concurring) (quoting Curry
v. State, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000)). Malik flatly rejects use of the jury
charge actually given as a means of measuring sufficiency of the evidence. See Gollihar,
46 S.W.3d at 252. Malik controls sufficiency of the evidence analysis even in the absence
of alleged jury charge error. Id. at 255. 
C. The Law Applicable to the Indecency-with-a-Child Counts
1. Counts 1, 4 and 5
          The statutory period of limitation for indecency with a child is ten years from the
child's eighteenth birthday. Tex. Code Crim. Proc. Ann. art. 12.01(5)(A) (Vernon 2005). 
The indictment alleged various sexual offenses against Carnahan's minor stepdaughters. 
Count 1 alleged indecency with the older stepdaughter on or about November 1, 1993 by
touching her genitals. Counts 4 and 5 alleged indecency with the younger stepdaughter
on or about October 1, 1995, and October 1, 1996, respectively, by touching her genitals. 
See Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, sec. 21.11, 1993 Tex. Gen.
Laws 3586, 3616, amended by Act of May 23, 2001, 77th Leg., R.S., ch. 739, 2001 Tex.
Gen. Laws 1463, 1464 (current version at Tex. Pen. Code Ann. § 21.11(a)(1) (Vernon
2003)).
 2. "On or About" Allegation of Date of Offense
          Unless the date is a material element of an offense, it is not necessary for an
indictment to specify the precise date on which the charged offense occurred. See Garcia
v. State, 981 S.W.2d 683, 685-86 (Tex. Crim. App. 1998) (en banc). The primary purpose
of specifying a date in the indictment is not to notify the accused of the date of the offense. 
Id. at 686. Rather, the purpose of providing a date is to show that the prosecution is not
barred by the statute of limitation. Id. When an indictment alleges that a crime occurred
"on or about" a certain date, the State may prove an offense "with a date other than the
one specifically alleged so long as the date is anterior to the presentment of the indictment
and within the statutory limitation period and the offense relied upon otherwise meets the
description of the offense contained in the indictment." Yzaguirre v. State, 957 S.W.2d 38,
39 (Tex. Crim. App. 1997) (en banc) (quoting Sledge v. State, 953 S.W.2d 253, 256-57
(Tex. Crim. App. 1997) (en banc)). Accordingly, the hypothetically correct jury charge in
this case would instruct the jury that the State could prove that the charged offenses were
committed before, on, or after the dates alleged in the indictment so long as the dates were
before the date of the indictment and within the applicable limitation period. Mireles v.
State, 901 S.W.2d 458, 459 (Tex. Crim. App. 1995) (en banc); DeMoss v. State, 12
S.W.3d 553, 560 (Tex. App.–San Antonio 1999, pet. ref'd).



3. The Elements of Indecency with a Child as Limited by the Indictment
          Thus, the hypothetically correct jury charge against which we measure legal
sufficiency in Count 1 of the indictment in this case would ask the jury if Carnahan (1) on
or about November 1, 1993, (2) intentionally or knowingly (3) engaged in sexual contact
(4) with the older stepdaughter, who was then a child under 17 years old and not his
spouse, (5) by touching her genitals. For Counts 4 and 5 involving the younger
stepdaughter, the hypothetically correct jury charge would contain the same elements,
alleged to have occurred on or about October 1, 1995, and October 1, 1996. We turn to
the relevant definitions. 
 4 Definitions Used in the Indecency-with-a-Child Statute
           The penal code defines "sexual contact" as "any touching of the anus, breast, or
any part of the genitals of another person with intent to arouse or gratify the sexual desire
of any person." Tex. Pen. Code Ann. § 43.01 (Vernon 2003). The offense of indecency
with a child requires proof of the accused's intent to engage in the proscribed contact
rather than an intent to bring about any particular result. Rodriguez v. State, 24 S.W.3d
499, 502 (Tex. App.–Corpus Christi 2000, pet. ref'd). Thus, the definitions in the
hypothetically correct jury charge in this case concerning the applicable culpable mental
state for the indecency-with-a-child counts would be limited to the nature of the conduct,
rather than the result of conduct or circumstances surrounding the conduct. 
          A person acts intentionally, or with intent, with respect to the nature of the conduct
or a result of the conduct when it is the person's conscious objective or desire to engage
in the conduct or cause the result. Tex. Pen. Code Ann. § 6.03(a) (Vernon 2003). 
Similarly, a person acts knowingly, or with knowledge, with respect to the nature of conduct
or to circumstances surrounding the conduct when the person is aware of the nature of the
conduct or that the circumstances exist. Tex. Pen. Code Ann. § 6.03(b) (Vernon 2003). 
A fact finder may infer the accused's mental state from the acts, words, and
conduct of the accused and from the circumstances surrounding the acts in which the
accused engaged. See Hernandez v. State, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991)
(en banc); Dillon v. State, 574 S.W.2d 92, 94 (Tex. Crim. App. [Panel Op.] 1978). An
accused rarely facilitates conviction by admitting to the requisite intent or knowledge, and
it is seldom possible to prove by direct evidence what an accused intended or knew at the
time of the incident. Thus, the fact finder usually must infer intent and knowledge from
circumstantial evidence rather than direct proof. See Gardner v. State, 736 S.W.2d 179,
182 (Tex. App.–Dallas 1987), aff'd, 780 S.W.2d 259 (Tex. Crim. App. 1989); see also
Hernandez, 819 S.W.2d at 810; Dillon, 574 S.W.2d at 94-95. 
          Specifically, the fact finder can infer the requisite intent to arouse or gratify the
sexual desire of a person from conduct, remarks, or all the surrounding circumstances. 
Robertson v. State, 871 S.W.2d 701, 705 (Tex. Crim. App. 1993); McKenzie v. State, 617
S.W.2d 211, 216 (Tex. Crim. App. 1981). The intent to arouse or gratify may be inferred
from conduct alone. McKenzie, 617 S.W.2d at 216. No oral expression of intent is
necessary. Id.; Gregory v. State, 56 S.W.3d 164, 171 (Tex. App.–Houston [14th Dist.]
2001, pet. granted). Nor is visible evidence of sexual arousal required. McKenzie, 617
S.W.2d at 216; Gregory, 56 S.W.3d at 171. Further, the fact finder may draw an inference
of guilt from the accused's acts, words, and conduct before, during, and after the incident. 
See Foster v. State, 779 S.W.2d 845, 859 (Tex. Crim. App. 1989) (en banc) (inference of
guilt may be drawn from flight). 
D. The Law Applicable to the Aggravated-Sexual-Assault-of-a -Child Counts1. Counts 2, 3, 6, 7, and 8
          The statutory period of limitation for aggravated sexual assault of a child is ten years
from the child's eighteenth birthday. Tex. Code Crim. Proc. Ann. art. 12.01(5)(B) (Vernon
2005). Counts 2 and 3 of the indictment alleged that Carnahan intentionally and knowingly
caused digital penetration of the older stepdaughter's sexual organ on or about March 1
and November 1, 1994, respectively. Counts 6, 7, and 8 alleged that Carnahan
intentionally and knowingly committed aggravated sexual assault of the younger
stepdaughter by (1) genital-to-genital contact on or about March 1, 1997, (2) genital-to-mouth contact on or about October 1, 1997, and (3) digital penetration on or about March
1, 1998. 
2. The Elements of Aggravated Sexual Assault of a Child 
          Thus, the hypothetically correct jury charge against which we measure legal
sufficiency in Counts 2, 3, and 8 of the indictment would ask the jury if Carnahan (1) on or
about the alleged dates, (2) intentionally or knowingly, (3) caused penetration of the sexual
organ, (4) of each of the stepdaughters, who were then children under 14 years old and
not married to him, (5) by any means. See Act of May 26, 1999, 76th Leg., R.S., ch. 417,
§ 2, 1999 Tex. Gen. Laws 2752, 2753, amended by Act of May 15, 2001, 77th Leg., R.S.,
ch. 459, § 5 (current version at Tex. Pen. Code Ann. § 22.021(a)(1)(B)(i) (Vernon Supp.
2004-05)). As to Count 6 of the indictment, the hypothetically correct jury charge would
ask the jury if Carnahan (1) on or about March 1, 1997, (2) intentionally or knowingly (3)
caused the sexual organ (4) of the younger stepdaughter, who was then a child under
14 years old and not his spouse, (5) to contact (6) his sexual organ. See Act of May 26,
1999, 76th Leg., R.S., ch. 417, § 2, 1999 Tex. Gen. Laws 2752, 2753, amended by Act of
May 15, 2001, 77th Leg., R.S., ch. 459, § 5 (current version at Tex. Pen. Code Ann. §
22.021(a)(1)(B)(iii) (Vernon Supp. 2004-05)). As to Count 7, the hypothetically correct jury
charge would ask the jury if Carnahan (1) on or about October 1, 1997, (2) intentionally or
knowingly (3) caused the sexual organ (4) of the younger stepdaughter, who was then a
child under 14 years old and not his spouse, (5) to contact (6) his mouth. See Act of May
26, 1999, 76th Leg., R.S., ch. 417, § 2, 1999 Tex. Gen. Laws 2752, 2753 (amended 2001). 
We turn to additional relevant definitions. 
3. Definitions Used in the Aggravated-Sexual-Assault-of-a-Child Statute
          The Texas Court of Criminal Appeals has not addressed whether aggravated sexual
assault of a child is a nature-of-conduct, result-of-conduct, or combined offense. See
Baker v. State, 94 S.W.3d 684, 691 (Tex. App.–Eastland 2002, no pet.); see also Cook,
884 S.W.2d at 492-94 (Maloney, J., concurring); Duhart v. State, 890 S.W.2d 187, 191
(Tex. App.–Corpus Christi 1994, no pet.); Murray v. State, 804 S.W.2d 279, 281 (Tex.
App.–Fort Worth 1991, pet. ref'd). Where an offense is not clearly categorized with respect
to the conduct elements, the trial court may submit to the jury the full statutory definitions
of "intentionally" and "knowingly" because both definitions allow the jury to consider the
nature of the accused's conduct or the results of the conduct. Baker, 94 S.W.3d at 691
(citing Murray, 804 S.W.2d at 281). 
E. The Law Applicable to the Sexual-Assault-of-a -Child Counts1. Counts 9, 10, 11, 12, and 13
          The statutory period of limitation for sexual assault of a child is also ten years from
the child's eighteenth birthday. Tex. Code Crim. Proc. Ann. art. 12.01(5)(B) (Vernon
2005). Counts 9, 10, 11, 12 and 13 alleged that Carnahan intentionally and knowingly
sexually assaulted the younger stepdaughter by (1) genital-to-mouth contact on or about
October 1, 1998, (2) digital penetration on or about March 1, 1999, (3) genital-to-mouth
contact on or about October 1, 1999, (4) digital penetration on or about March 1, 2000, and
(5) genital-to-mouth contact on or about October 1, 2000, respectively. 
 
2. The Elements of Sexual Assault of a Child 
          Thus, the hypothetically correct jury charge against which we measure legal
sufficiency in Counts 9, 11, and 13 of the indictment would ask the jury if Carnahan (1) on
or about the alleged dates (2) intentionally or knowingly (3) caused the sexual organ (4) of
the younger stepdaughter, who was then a child under 14 years old and not his spouse,
(5) to contact the mouth by any means. See Tex. Pen. Code Ann. § 22.011(a)(2)(C)
(Vernon Supp. 2004-05). As to Counts 10 and 12, the hypothetically correct jury charge
would ask if Carnahan (1) on or about the alleged dates (2) intentionally or knowingly (3)
caused penetration of the sexual organ (4) of the younger stepdaughter, who was then a
child under 14 years old and not his spouse, (5) by any means. See Tex. Pen. Code Ann.
§ 22.011(a)(2)(A) (Vernon Supp. 2004-05). 
3. Definitions Used in the Sexual-Assault-of-a-Child Statute
          Three "conduct elements" can be involved in an offense: (1) nature of the conduct,
(2) result of the conduct, and (3) circumstances surrounding the conduct. McQueen v.
State, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989) (en banc). A particular offense may
contain one or more of these conduct elements. Id. Whether sexual assault of a child is
a nature-of-conduct, result-of-conduct, or combined offense is unsettled. We conclude that
until the Texas Court of Criminal Appeals classifies sexual assault as a result-oriented
crime, a nature-of-the-conduct offense, or a combination, "it is not error for the trial court
to submit the statutory definitions of 'intentionally' and 'knowingly' because both definitions
allow the jury to consider the nature of [an] offender's conduct or the results of his
conduct." Saldivar v. State, 783 S.W.2d 265, 267 (Tex. App.–Corpus Christi 1989, no
pet.); see also Cook, 884 S.W.2d at 492-94. 
F. The Evidence at Trial
          Carnahan married the girls' mother in May 1993, when the girls were about nine and
ten years old. The older stepdaughter was born on January 1, 1983. The younger one
was born on April 29, 1984. At the time of the marriage, Carnahan moved into the
townhome where the girls were living with their mother. Allegations of sexual contact arose
after the younger stepdaughter told a neighbor, during the summer of 2001, that Carnahan
had molested her for the last six years.


 From the neighbor, the jury heard that the
younger stepdaughter told her Carnahan attempted intercourse with her when she was in
the fourth grade. The girls' mother confirmed the outcry from the younger stepdaughter
and asked the older stepdaughter about sexual contact by Carnahan. The older
stepdaughter confirmed it had occurred.
          The older stepdaughter testified she was nine or ten years old and in the fourth
grade when her mother began dating Carnahan. Molestation began a few months after
the marriage in 1993. She described for the jury sexual contact and multiple acts of sexual
contact by Carnahan.


 She testified that the contacts and conduct occurred enough that
she dreaded weekends at home and looked forward to Mondays and school. The contact
stopped when she reached the sixth grade, when she was twelve years old.


 
          The younger child described for the jury years of sexual contact and multiple acts
of sexual conduct by Carnahan, spanning from 1995 through 2001.


 The incidents began
in the fall of 1995 when she was in the fifth or sixth grade and stopped the summer of her
senior year in high school. 
          Admitted in evidence was a letter Carnahan sent the girls' mother, which stated, in
part, "If you really want to know about [the younger stepdaughter], she is not at all what you
believe. There was very little touching, but every bit of it was by her inducement and
request" (underlining in original). Both girls testified about marital discord between
Carnahan and their mother. They denied telling their mother about the incidents prior to
the younger stepdaughter's outcry. The jury heard that their mother pursued divorce
proceedings the day after the outcry. 
          Two defense witnesses testified that social visits with Carnahan and his
stepdaughters revealed normal interaction between them, but marital problems existed
between Carnahan and the girls' mother. Carnahan testified in his own defense. He told
the jury that the younger stepdaughter asked him to look at a cyst on her leg because she
was aware of his "pre-med" background. He viewed the cyst, in his wife's presence, and
explained to the younger stepdaughter that the bump was a swollen lymph node. He
checked the cyst daily. He denied that his checking the cyst led to sexual contact. 
          Carnahan denied the charges. He admitted writing the letter to the girls' mother,
explaining that he wrote it because he was contemplating suicide after receiving news of
his indictment. He related to the jury that he gave the girls rubdowns at their request
because their muscles hurt, but "it sure wasn't anything sexual. It was a chore, a
monotonous chore, almost daily." He described numerous incidents regarding such
contact.


 He admitted fleeing to Costa Rica pending trial. F. Sufficiency Analyses
          With a hypothetically correct jury charge in mind that reflects definitions and the
elements of the offenses, we turn to the legal and factual sufficiency analyses of the
evidence to support the convictions for indecency, aggravated assault, and sexual assault
of a child. 
1. Elements Common to the Charged Offenses
          As an initial matter, we conclude that, viewed under the legal and sufficiency
standards, the evidence conclusively established that (1) the stepdaughters were under
the age of seventeen years and not married to Carnahan, and (2) the offenses occurred
in Nueces County, Texas. The offenses proved by the State conformed with the
allegations in the indictment, were within the statute of limitation, and occurred before the
date of the indictment. See Yzaguirre, 957 S.W.2d at 39. The State was not required to
prove that any particular offense occurred on any particular date. See Mireles, 901 S.W.2d
at 459. Viewing the evidence under the appropriate legal and factual sufficiency
standards, we conclude that any rational trier of fact could have found beyond a
reasonable doubt that Carnahan committed the offenses charged in the indictment on
dates prior to the date of the indictment and within the limitation period. See Jackson,
443 U.S. at 319; Johnson, 23 S.W.3d at 7; Zuniga, 144 S.W.3d at 484-85. 
2. The Older Stepdaughter
          Count 1 charged Carnahan with indecency with a child against the older 
stepdaughter. Counts 2 and 3 charged him with aggravated sexual assault. The evidence
showed that, shortly after he married the girls' mother, Carnahan began molesting the older
stepdaughter when she was about nine years old. He continued until she was twelve. The
abuse began with Carnahan's touching her sexual organ and escalated to digital
penetration. Carnahan denied sexual contact and conduct.
3. The Younger Stepdaughter
          As to the younger stepdaughter, the indictment charged Carnahan as follows:
(1) indecency with a child, Counts 4 and 5; (2) aggravated sexual assault of a child, Counts
6, 7, and 8; and (3) sexual assault of a child, Counts 9, 10, 11, 12, and 13. The younger
stepdaughter testified of numerous instances of sexual conduct and contact by Carnahan. 
Carnahan admitted to touching her breasts and sexual organ on separate occasions but
claimed he did so accidentally. In his letter to the girls' mother, he admitted "[t]here was
very little touching, but every bit of it was by [the younger daughter's] inducement and
request" (underlining in original). 
4. Disposition
          The jury was free to resolve conflicts in testimony. See Mosley v. State, 983 S.W.2d
249, 254 (Tex. Crim. App. 1998) (en banc) (questions concerning the credibility of
witnesses and the weight to be given their testimony are to be resolved by the trier of fact);
see also Esquivel v. State, 506 S.W.2d 613, 615 (Tex. Crim. App. 1974). Evidence is not
rendered insufficient when conflicting evidence is introduced. Matchett v. State, 941
S.W.2d 922, 936 (Tex. Crim. App. 1996) (en banc). The reviewing court must assume that
the fact finder resolved the conflicts, including conflicting inferences, in favor of the verdict,
and must defer to that resolution. Id. Further, the fact finder may draw an inference of guilt
from the accused's acts, words, and conduct before, during, and after the incident. See
Foster, 779 S.W.2d at 859 (inference of guilt may be drawn from flight). 
          We are mindful that a child's description of sexual contact is sufficient evidence from
which a fact finder may infer the intent-to-gratify element of indecency with a child. See,
e.g., McKenzie, 617 S.W.2d at 216; Brown v. State, 871 S.W.2d 852, 856 (Tex.
App.–Corpus Christi 1994, pet. ref'd). The jury heard the stepdaughters' descriptions of
sexual conduct and contact and heard Carnahan's denial. By its verdict, the jury rejected
Carnahan's claim of innocence. By evidence of flight, the jury was free to infer guilt. See
Foster, 779 S.W.2d at 859. 
          Viewing the evidence in the light most favorable to the verdict and in a neutral light,
we conclude that any rational trier of fact could have found beyond a reasonable doubt the
intent-to-gratify elements of indecency with a child. See Jackson, 443 U.S. at 319; see
also Johnson, 23 S.W.3d at 7; Zuniga, 144 S.W.3d at 484-85. Viewing the evidence in the
light most favorable to the verdict, we conclude that any rational trier of fact could have
found beyond a reasonable doubt that Carnahan engaged in sexual contact with the older
stepdaughter by touching her sexual organ and by digital penetration. See Jackson, 443
U.S. at 319; Malik, 953 S.W.2d at 240. The evidence is legally sufficient. Furthermore,
viewing all of the evidence in a neutral light, we conclude that the evidence supporting the
verdict is not too weak to support the jury's finding of guilt beyond a reasonable doubt; nor
is the weight of the evidence contrary to the verdict strong enough that the State could not
have met its burden of proof. Zuniga, 144 S.W.3d at 484-85. The evidence is factually
sufficient. 
          As to the younger daughter, viewing the evidence in the light most favorable to the
verdict, we conclude that any rational trier of fact could have found beyond a reasonable
doubt that Carnahan engaged in sexual contact with the younger stepdaughter by (1) 
contact with her sexual organ (Counts 4 and 5), (2) genital-to-genital contact (Count 6), (3)
genital-to-mouth contact (Counts 7, 9, 11, and 13), and (4) digital penetration (Counts 8
and 10). See Jackson, 443 U.S. at 319; Malik, 953 S.W.2d at 240. The evidence is legally
sufficient. Furthermore, viewing all of the evidence in a neutral light, we conclude that the
evidence supporting the verdict is not too weak to support the jury's finding of guilt beyond
a reasonable doubt; nor is the weight of the evidence contrary to the verdict strong enough
that the State could not have met its burden of proof. Zuniga, 144 S.W.3d at 484-85. The
evidence is factually sufficient. 
          Thus, as to the older stepdaughter, we conclude the evidence was legally and
factually sufficient to sustain Carnahan's convictions for indecency with a child and
aggravated sexual assault as alleged in Counts 1, 2, and 3 of the indictment. We overrule
Carnahan's eighth, ninth, and tenth issues presented. 
          As to the younger stepdaughter, viewing the evidence under the legal and factual
sufficiency standards, we similarly conclude that the evidence was legally and factually
sufficient to sustain Carnahan's convictions for indecency with a child, aggravated sexual
assault, and sexual assault as alleged in Counts 4 through 13 of the indictment. We
overrule Carnahan's eleventh through twentieth issues presented. 
V. FORFEITURE OF ERROR ON APPEAL
          As a prerequisite to presenting a complaint for appellate review, the record must
show that the appellant made the complaint to the trial court. See Tex. R. App. P. 33.1. 
As to Carnahan's remaining issues, for the reasons set forth below, we conclude he
forfeited error because the issues were not raised before the trial court.  A. Competency to Stand Trial
          By his twenty-first issue, Carnahan argues that he could not be sentenced because
he was denied his right to the determination of competency to stand trial.


 Carnahan did
not object at trial to imposition of the sentence. During the motion for new trial hearing, his
objection was generally that he was denied a competency hearing. We conclude that he
forfeited his right to complain because (1) he did not present the complaint to the trial court,
and (2) the general objection during the motion for new trial phase does not comport with
his current argument. See Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). 
We overrule Carnahan’s twenty-first issue.
B. Cruel and Unusual Punishment 
          By his twenty-second issue, Carnahan argues that the sentence amounts to cruel
and unusual punishment and/or grossly disproportionate punishment. Prior to sentencing,
Carnahan did not object to the imposition of the sentence on the basis that he was
incompetent to stand trial. At the motion for new trial hearing, Carnahan did not argue his
present complaint to the trial court. Because the objections asserted now do not comport
with those uttered below, the issue before us was not preserved for review. See Wilson,
71 S.W.3d at 349. He has forfeited his right to complain. We overrule his twenty-second
issue.
C. Inflammatory Evidence During the Culpability Phase
          By his twenty-third issue, Carnahan argues that the State's evidence was
inflammatory and calculated to cause the jury to render an excessive sentence. The
record shows that the defense objected to the testimony of the neighbor, also a nurse, who
examined the younger daughter's cyst. The basis of the objection was that the witness
was not qualified as an expert to testify about the effect of the sexual conduct and contact
upon the family. The trial court sustained the objection. As a general rule, to preserve
error for appellate review, Carnahan must have made a timely, specific objection, at the
earliest opportunity, and obtained an adverse ruling. Tex. R. App. P. 33.1; Turner v. State,
805 S.W.2d 423, 431 (Tex. Crim. App.1991). As to his complaint regarding the nurse,
Carnahan has not shown an adverse ruling. Further, Carnahan did not present his
complaint regarding the remaining witnesses. Thus, he has forfeited his right to complain. 
We overrule his twenty-third issue.
D. Constitutional Right to a Fair Trial
          By his twenty-fourth issue, Carnahan argues that the trial court denied him his state
and federal right to a fair trial when it granted the State's motion to quash his subpoenas
to six jurors. The subpoenas were issued to secure the testimony of the jurors at the
motion for new trial hearing on grounds of juror misconduct. Carnahan did not present his
constitutional arguments to the trial court. Thus, he forfeited his right to complain. We
overrule his twenty-fourth issue. 
VI. CONCLUSION
          We have reviewed, as we must, Carnahan's twenty-four issues under the applicable
appellate standards of review. We have overruled all his issues presented. We affirm. 
 
 
                                                                                      ERRLINDA CASTILLO
                                                                                      Justice
Do not publish.
Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and filed
this 2nd day of June, 2005.